Miller v. The State of Florida.

JOHN MILLER, PLAINTIFF IN ERROR, VS. THE STATE OF FLO-
RIDA, DEFENDANT IN ERROR.

1. The act of 1870, entitled "An act concerning testimony," gives to the accused in all criminal prosecutions the right to make a statement, under oath, before the jury, of the matter of his or her defense, and does not make the accused a witness in the case, or subject him to the rules governing in the examination of witnesses.
2. Such statement, when so made, is for the jury alone, and to be taken by them into consideration in connection with all the evidence of the case, and to be allowed such weight, and such only, as they, in their judgment, may see fit to give to it. ·
3. It is not sufficient, in a case of perjury, for the court to charge the jury "that if they believed, from the testimony, that the accused took the oath, and that it was false, he was guilty." The court should charge that they must find that the accused took a wilfully false oath, and that it must be so taken in relation to matter material to the issue, in order to make him subject to the punishment provided for perjury.

Writ of error from the Circuit Court of Madison county.

E. J. Vann for Appellant.

I. The court below erred in refusing to grant to the accused "the right of making a statement of the matter of his defense, under oath, before the jury," unless he was put upon the stand as a witness, subject to be cross-examined, &c., as a witness. Laws of Fla. 1866, Chap. 1473, No. 10, Sec. 4.

Intention of the law-maker may be gathered from the context. In the first three sections of said act, parties to civil actions who are allowed to testify are mentioned and described as witnesses. This qualification is not used in section 4, and the idea conveyed by it is, by a proper construction of said section, they are excluded.

This view is not in conflict with 13 Fla. 680—Barber vs. State.

The discretion given to the court below to permit the party accused to make said "statement" was repealed by

act in 1870, and the "right" to make it guaranteed without qualification. Laws 1870, Chap. 1846, No. 2.

The reason and policy of the law forbids:

1. Because the accused could not be made amenable as a witness—for instance, for contempt for not answering, &c., impracticable, &c.

2. Because by an expert cross-examination the accused might be entrapped into a confession, the fear of which, or a refusal to answer, might render this "right" a practical nullity.

3. Because intended as an *ex parte* "statement" of such as, and as much as, he may wish to "state" as "the matter of his defense."

4. Because no detriment to the State can result, as it is the exclusive right and province of the jury to believe the "statement" in whole, or in part, or not, as they may see proper.

II. The court erred in refusing, after the accused was sworn as a witness, under the ruling of the court, to allow him to testify to the matter or facts as made known, offered and proposed (in substance) to the court.

Because said testimony or "statement" was relevant, pertinent and proper, in that it showed, or intended to show, the *intent*, to-wit: that the oath alleged to be false was not willfully, knowingly and corruptly false, the *intent* being the gist of the offense, and as the "prisoner must be judged as though the facts were as honestly believed to be true." 1 Bish. Cr. Law, §§ 287, 288; 2 Ib. 1006–7–8; 2 Bish. Cr. Pro. §§ 841 to 850.

As to ignorance of law, of fact, and both of law and fact, *vide* 1 Bish. Cr. Law, §§ 294 to 312, 320 and 345.

III. The court erred in charging the jury that if they believed from the evidence that the accused took the oath, and that it was false, the prisoner "is guilty." Because the court should have charged that, if they believed from the evidence that the accused took the oath, and that it was

*knowingly, willfully* and *corruptly* false, they might find him guilty. 2 Bish. Cr. Law, 1006–7–8; 2 Bish. Cr. Pro. 841 to 880; Statute in regard to and definition of perjury, Bush. Dig. p. ——; 3 McLean, 583; 4 Ib. 113; 3 Ala. 602; and *supra* as to intent.

IV. The court erred in charging the jury that they should not consider anything the prisoner said.  13 Fla. 680.

V. The court erred in charging the jury that ignorance was no excuse, and that if the accused wished to avail himself of such a defense, he should have plead "insanity or idiocy," and that they could not consider it without committing perjury.  1 Bish. Cr. Law, 394 to 412.

VI. The court erred in charging the jury as follows: "You have nothing to do with the excuse on account of ignorance—that is a matter for the court—he should have plead it, &c.  Authorities cited *supra*.

VII. The court erred in charging the jury that the accused "understood what the court asked him—was he any relation .to Jerry Grimes."  The court cannot express an opinion as to the conclusiveness, or *vice versa*, of the testimony—that is for the jury alone.  Fla. Reports and Laws, *passim*.

VIII. The court erred in refusing to grant the accused a new trial.  *Vide* charge of the court; exceptions taken at trial; motion for a new trial; and authorities cited above.

*Mr. Attorney-General W. A. Cocke* for the State.

1. Moved to strike from the docket, because the writ of error and supersedeas were obtained after the criminal was confined in the penitentiary. The writ of error and supersedeas could not reach the warden of the penitentiary—

1. Because not addressed to him.

2. Because the bonds could not be given on which the writ of error and supersedeas were granted.  *Vide* act of Legislature in relation to writs of error and supersedeas. Bush, LVII. p. 278; Bouv. title, error; writ of error ad-

dressed to the court. See Bouv. title, supersedeas. Wharton's Criminal Law, 3049.

### Bill of Exceptions.

Grounds taken on the bill of exceptions, insufficient.

1. That the accused should be placed on the stand as a witness. If he made his statement, why should he not be cross-examined? The law does not forbid it. See statute, Jan. 16, 1866.

2. The second exception—no grounds for setting aside the verdict of the jury.

Perjury is defined by our statute; this is a statutory offense, not one at common law. See Perjury at Common Law; Wharton's American Criminal Law, Vol. 3, §§ 2198 and 2,199.

There is a difference in the statutory offense of perjury. *Vide* act of 1868, Laws of Florida, Chap. 6, p. 89, Sec. 2.

It is not, as contended in the bill of exceptions, necessary that the court should have instructed the jury that the oath was "knowingly, wilfully and corruptly false." That was not even required by the common law.

The indictment charges the accused with "wilfully" committing perjury. This is the only term used in the statute. This is sufficient evidence in the English and American practice. See Bouv. Law Dic. title, perjury, and the large number of cases cited.

The third ground of exception is, that the accused was ignorant that he was committing *perjury*. This is no excuse. *Vide* Wharton's American Criminal Law, 6 Ed. § 2,201, and cases cited on same page, notes k. n. o.

The court had the right to refuse to permit the statement to go to the jury after it was made. The discretionary power had not departed from the court to refuse the statement of the witness even after it had been made. *Vide* Barber vs. the State of Florida, XIII Fla., Opinion of the Court, p. 680, citing the act of January 16, 1866, (not of 1865, as mentioned in the opinion.)

Miller v. The State of Florida.

The law in Bush is incorrectly copied; a part is left out. It is also a mistake of Mr. Bush in stating that the act is repealed. Act of January 16, 1866.

### Statement of the Case.

On November 24, 1875, John Miller, the plaintiff in error, was duly arraigned and tried in the Circuit Court of the 3d Judicial District, held in and for Madison county, on an indictment for perjury.

The indictment charged that on the 20th day of October, 1874, at a Circuit Court held at the court-house in the county of Madison, one Jerry Grimes was being tried upon an indictment for feloniously procuring a felony to be committed by one Isaiah Phillips, charged with the crime of forgery. That this John Miller was called and appeared as a juror; that he was challenged and sworn by the Judge touching his qualifications as such juror. That it became a material question and subject of inquiry whether the said John Miller was related to the accused, Jerry Grimes. That the said John Miller, intending to deceive the said court, unlawfully, falsely, knowingly, willfully and corruptly, did swear that he was not related to the said Jerry Grimes, when, in fact, at that time, he was the father-in-law of the said Jerry Grimes. That he so swore for the purpose of causing the said Jerry Grimes to be wrongfully acquitted on the said indictment, and for no other purpose whatever. That said John Miller knowingly, willfully and corruptly did commit willful and corrupt perjury.

On the trial of the cause, the counsel for the accused took certain exceptions to the rulings of the court, which, having been duly settled and signed by the Circuit Judge, appear in the return to the writ of error in the following words:

I. On the trial of the case, after the State had rested the defendant, the party accused, claimed and insisted upon the right of making a statement to the jury, under oath, of the matter of his defense. Whereupon, the court refused to

allow him to do so, unless he was put up as a witness, subject to cross-examination.

To which ruling of the court the said accused excepted.

II. The court, among other things, charged the jury that if they believed from the testimony that the accused took the oath, and that it was false, the accused was guilty.

To which the accused excepted on the ground that the court should have charged that, if the accused took the oath, and it was knowingly, willfully and corruptly false, they might find a verdict of guilty.

III. The accused offered to make a statement of the matter of his defense, on oath, before the jury, which defense was (in substance) as stated to the court: "That it was true that Jerry Grimes married the daughter of the accused, but that soon after their marriage said Grimes ill-treated his daughter and abandoned her. That he had for several years been compelled to support his daughter and child. That Jerry Grimes had gone off, and he did not consider he was anything to him or his family. That when the accused was asked on his *voir dire* whether or not he was related to the prisoner at the bar, Jerry Grimes, he answered he was not, being at the time of the taking the said oath under the *bona fide* impression and conviction that, as he, the said Jerry Grimes, had left his wife, &c., as aforesaid, he really was not related to the accused, Jerry Grimes. That he made oath to what he ignorantly supposed to be true, and thus that he did not willfully and corruptly make said oath."

The court refused to allow the accused to make such a defense, either as a statement or otherwise, on the ground, as the court said, of its irrelevancy, and that if the same was true it would be no defense, as ignorance of law was no excuse.

To which the accused excepted.

The jury found the prisoner guilty of perjury. The counsel for the accused moved for a new trial upon the errors so alleged, and also upon the further grounds that the

verdict of the jury was contrary to law, and because the jury was mislead by the charge of the court.

The motion for new trial was denied, and the court proceeded to sentence the prisoner to State prison for the term of ten years.

The accused brings the cause into this court by writ of error.

VAN VALKENBURGH, J., delivered the opinion of the court.

On the trial of this case, and after the State had rested, the counsel for the accused offered the statement of the prisoner, under oath, as to the matter of his defense, which the court refused to allow, unless he was put upon the stand as a witness, subject to cross-examination.

The statute of 1865, Chapter 1472, Section 4, provides that " in all criminal prosecutions, the party accused shall have the right of making a statement of the matters of his or her defense, under oath, before the jury, when, in the opinion of the court, the ends of justice shall so require."

Under this act, it was in the discretion of the court to permit the accused to make such a statement, depending entirely upon the question as to whether the " ends of justice shall so require."

The making of such a statement under oath does not necessarily constitute the accused a witness, nor does it subject him to the rules applicable to witnesses, making him liable to cross-examination. It is simply a presentation verbally, in his own language and manner, of the matters pertaining to his defense, of such facts and circumstances surrounding the case as will go to excuse the offense and negative the idea of willful or corrupt intent. It is for the jury alone, and is to be taken into consideration by them, in connection with all of the evidence in the case, and to be allowed such weight, and such only, as they, in their judgment, may see fit to give it.

Miller v. The State of Florida.

In the case of Barber vs. the State, (13 Fla. 681,) where the error alleged was, that "the court charged the jury that the statement of the defendant is not evidence, and that they could not take such statement into consideration as evidence," the court says : "There was some purpose to be subserved more than the mere amusement of the jury in allowing the statement to be made. It is the jury alone who are entitled to consider the statement, and if it be remarked upon at all, it should be to suggest to the jury, in effect, that they are to attach to it such importance, in view of the nature of the offense charged, and of the testimony before them, as in their good judgment it is entitled to. It is for their consideration alone, and they may disregard it entirely." And again : "The defendant is entitled, when permitted to make the statement, to the benefit or disadvantage of such impression as he may be able to make upon the judgment of the jury."

This statute, however, of 1865, was repealed by Chapter 1816 of the laws of 1870. This is an act entitled "An act concerning testimony," embodied in a single section, and reads as follows : "In the courts of Florida, there shall be no exclusion of any witness in a civil action because he is a party to or interested in the issue tried. In all the criminal prosecutions, the party accused shall have the right of making a statement to the jury, under oath, of the matter of his or her defense."

This takes from the court the discretion allowed by the statute of 1865, and the unqualified right of the accused to make such a statement, under oath, to the jury, is established by law.

Had it been the intention of the Legislature to provide that the accused should make himself a witness, subject to the rules controlling in the examination of witnesses, there would have been no necessity for the second paragraph in the section where this provision is found. A slight change of the first portion of the section would have covered every case of civil action or criminal prosecution.

The second ground of error is : "The court, among other things, charged the jury that if they believed, from the testimony, that the accused took the oath, and that it was false, the accused was guilty."

Perjury is defined in the elementary books to be the taking of a willfully false oath by one who, being lawfully sworn by a competent court to depose the truth in any judicial proceeding, swears absolutely and falsely, in a matter material to the point in question, whether he be believed or not. Our statute, in accordance with this definition of perjury, in an "act to provide for the punishment of crime and proceedings in criminal cases," passed in 1868, says : "Whoever, being authorized or required by law to take an oath or affirmation, *willfully* swears or affirms, falsely, in regard to any *material matter* or thing respecting which such oath or affirmation is authorized or required, shall be deemed guilty of perjury," &c.

It will be seen that both at common law and by statute in this State, the rule is the same, or, in other words, that the common law definition of the crime of perjury is made a portion of the statutes, and that the oath must not only be false, but that it must be *willfully* false, and to *matter material* to the issue. It is necessary so to charge the offense in the indictment, or there is no crime alleged. An oath may be false, and still not willfully false, so as to constitute the crime of perjury. 2 Bishop Crim. Law, § 1046. See, also, Commonwealth vs. Brady, 5 Gray, 78.

It may also be to an immaterial matter or thing, one not material to the issue, in which case it could not be held as a willful false oath. 1 Hawkins P. C., C. 27, page 431.

In some cases, where a false oath has been taken, the party was punished by indictment at common law for a misdemeanor, though the offense did not amount to perjury. 2 Russell on Crimes, 603 ; 2 Bishop C. L., § 1014.

It is said " the false oath must be willful and taken with some degree of deliberation ; for if, upon the whole circum-

stances of the case, it shall appear probable that it was owing rather to the weakness than perverseness of the party, as where it was occasioned by surprise, or inadvertency, or a mistake of the true state of the question, it cannot but be hard to make it amount to voluntary and corrupt perjury, which is of all crimes whatsoever the most infamous and detestable." 1 Hawkins, P. C., C. 27, § 2; 2 Russell on Crimes, 597.

A false oath, taken by inadvertence or mistake, cannot amount to voluntary and corrupt perjury. 2 Wharton C. L. § 2199.

On the other hand, it has been held that a man may be guilty of perjury if he swears to a particular fact without, at the time, knowing whether it be true or false. It is no defense that the oath so taken is true, if the party swears to it willfully and corruptly, and has no probable ground for the oath. 1 Hawkins P. C., C. 27, page 433; People vs. McKenney, 3 Parker C. R. 510.

It will thus be seen that there is a difference between a *willful* false oath, constituting the crime of perjury, and a false oath which, at common law, might be punished as a misdemeanor. The one is stubborn and corrupt, while the other is simply not true, lacking the elements which go to constitute the crime of perjury as defined by our statute. The jury must find that the accused was guilty of taking a willfully false oath, and in relation to matter material to the issue, in order to convict him of the crime of perjury and to render him liable to the punishment prescribed for that offense, and to this end the court should have so charged them.

The third ground of error assigned is similar to and embraced in the first, that the court refused to permit the accused to make his statement of the matters of his defense, on oath, before the jury. The accused, at the same time of making such offer, stated to the court the substance of the statement so proposed to be made. The court refused to

grant the request upon the ground of irrelevancy, and said that if the facts so proposed to be stated to the jury were true, it was no defense. This point has been disposed of under the first above assignment of error, where we hold that the accused, under the statute, has a right to make a statement of the matter of his defense, on oath, before the jury. We cannot see how such a statement as is offered by the accused would be irrelevant. It related, certainly, to the matter of his defense; to the question, which the jury must determine, of the intent. Was the oath alleged to have been taken by the accused *willfully false?* or was it taken through inadvertence, and not with a corrupt motive? It would go for what it was worth, and while it might not strictly be a defense to the prosecution, yet the accused had a right to its consideration by the jury, whose judgment might have been influenced in his favor by it. "It would give to the jury for their consideration the facts upon which his oath was based, and the reasons operating upon his mind, and, from those facts and reasons they might determine the motives, if any, influencing him. We think it should have been admitted by the court.

The judgment must be reversed and a new trial awarded.